## Commonwealth v. Ammer

*John Q. Stranahan*, District Attorney, for Commonwealth.

*D. W. Patterson*, for defendant.

McKAY, J., February 14, 1958.—In this case defendant has appealed from a conviction of illegally harboring three unlicensed dogs on September 18, 1957. The appeal is from the judgment of Alex Elliott, a justice of the peace of East Lackawannock Township. The defense presented before the justice of the peace and before this court on appeal was that de-

fendant had been previously convicted of the same offense before another justice of the peace. There is no dispute as to the facts.

On or about September 18, 1957, three dogs owned by defendant were found in the act of killing some sheep belonging to Grover Garrett in the latter's pasture field. S. O. Rodawalt, an agent of the Department of Agriculture, investigated the incident and thereupon shot two of defendant's dogs. Defendant himself disposed of the third. The agent also killed another dog owned by one Rogers which was running sheep in another field of Garrett's. The testimony differed, however, as to whether this occurred on the same day that defendant's dogs killed the sheep or two days later.

Rodawalt assessed the damage sustained by Garrett at $106. Defendant reported the claim to his insurance carrier who adjusted it with Garrett by paying two thirds of the claim. Garrett gave a release to defendant of all demands growing out of the killing of the sheep. It is possible that one reason why the claim was adjusted instead of being paid in full was the uncertainty whether the Rogers dog had participated in the killing, although this was not developed in the hearing.

When the agent learned of the settlement, he notified defendant that the balance of the $106 would have to be paid to Garrett; otherwise he, Rodawalt, would make an information against defendant for harboring the three unlicensed dogs. Defendant, believing that he had settled his full civil liability to the owner of the sheep, refused to comply with Rodawalt's demand. The demand and threat to prosecute were repeated from time to time.

On November 21, 1957, at about 8:30 a.m., Rodawalt appeared before Justice Elliott and made the information in the present case. The justice sent de-

fendant a registered mail notice to appear, which was not delivered until November 25, 1957. No warrant was issued, but on December 21, 1957, defendant appeared before Justice Elliott and a hearing was held at which Rodawalt testified to the fact of possession of the dogs. The justice's transcript of the hearing contains the following:

"Defendant waived hearing. Time given until Monday Dec. 23, 1957 at the hour of 6 P.M. to furnish bond. Defendant failed to appear with Bond. December 26, 1957 Warrant issued to Constable Kenneth Kolb. Defendant brought to office and assessed $60.00 Fine plus costs. Upon failure to pay fine or post proper bond. Defendant remanded to County Jail for 30 days. Following advise of District Attorney John Q. Stranahan, Defendant released from jail on his own bond, for reviewing of this case."

On November 21, 1957, at about 2:30 p.m., six hours after the information in the present case was filed, defendant and a friend, Rupert Angermeir, appeared at the office of James Dillinger, a Justice of the Peace of Jefferson Township. There Angermeir made an information against defendant for harboring three unlicensed dogs in September 1957, the same offense for which the present information was made. Angermeir had learned of Rodawalt's repeated threats to arrest defendant and, of his own volition, made the information for the purpose of ending the threats of prosecution and getting the matter disposed of. At the time the information was made, neither Angermeir nor defendant knew of the charge then pending before Justice Elliott. At the hearing before Justice Dillinger, defendant plead guilty and was fined $5 and costs. There was no prior arrangement or understanding between Justice Dillinger and the prosecutor or defendant as to what the amount of the fine should be.

On December 31, 1957, defendant presented a peti-

tion to this court to allow an appeal from the sentence imposed by Justice Elliott. The appeal was heard January 21, 1958, and the testimony then taken disclosed the facts above set forth. In addition, it was testified that, at the hearing on December 23, 1957, defendant had brought to the attention of Justice Elliott the fact that he had been assessed and paid the fine to Justice Dillinger for the same offense for which he was then being tried.

The question before us in the present trial de novo is whether the prosecution before Justice Dillinger, terminating in the imposition and payment of a fine by defendant, is a defense to the present action.

In our opinion, it is not a valid defense.

In the first place, at the time the information was made before Justice Dillinger, another information had been made by the officer representing the Commonwealth for the same offense before Justice Elliott and was then pending in his court. In the case of Commonwealth v. Martin, 7 Pa. C. C. 153, an Allegheny County case, Slagle, J., held that when informations are made before two aldermen of the same city for the same offense, the alderman before whom the information is first made has exclusive jurisdiction of the case. It may be questionable whether the rule so announced is applicable where, as in the present case, a warrant has not yet been issued upon the first information at the time the second information is filed.

The more important, and we think controlling, reason why the proceedings before Justice Dillinger are not a defense in the present case is that it was not instituted in good faith for the purpose of enforcing the law in the normal course of criminal procedure but for the specific purpose of preventing a threatened prosecution for the offense from being made by the representative of the Department of Agriculture. It

amounts to a collusive, though not fraudulent, prosecution with a view of selecting a jurisdiction favorable to defendant. In our opinion, a bona fide prosecution by an officer whose duty it is to enforce the law cannot be thwarted by a friendly prosecution initiated with the approval and coöperation of defendant for the very purpose of being in a position to plead autrefois acquit in the other proceeding.

In 22 C. J. S. 187, the principle of law is stated which rules the present situation.

"The jurisdiction of one court does not attach, so as to exclude the jurisdiction of another, until jurisdiction of the person has been obtained. . . . Hence, while the court in which an indictment is first filed acquires exclusive jurisdiction when accused is arrested thereunder, in any other case, the court first acquiring jurisdiction of the person, as by arrest even under a junior indictment, acquires exclusive jurisdiction, *unless such arrest or indictment is fraudulently or collusively procured.*" (Italics supplied.)

Where, as in the present case, the prosecution before Justice Dillinger was made collusively, the law does not permit it to defeat the jurisdiction of Justice Elliott before whom the first information had been filed, notwithstanding no warrant of arrest had, as yet, been issued.

Under all the circumstances, however, we do not believe that defendant should be penalized by as large a fine as was imposed by Justice Elliott.

### Order

Now, February 14, 1958, we find defendant guilty and impose a fine of $25 and costs.

It is further ordered that the fine of $5 heretofore imposed against and paid by defendant to James H. Dillinger, justice of the peace, on November 21, 1957, be returned to defendant, the costs in that case, however, to be retained by the justice of the peace.